United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JEANENE HARLICK,<br><br>Plaintiff,<br><br>v.<br><br>BLUE SHIELD OF CALIFORNIA GROUP HEALTH PLAN; PACIFIC CONSTRUCTION & MANUFACTURING, INC. GROUP HEALTH PLAN,<br><br>Defendants. | ) | Case No. 08-3651 SC<br><br>ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on the parties' cross-motions for summary judgment. On January 15, 2010, Defendant California Physicians' Service d/b/a Blue Shield of California ("Defendant" or "Blue Shield") filed a Motion for Summary Judgment. Docket No. 45 ("Def.'s MSJ"). On the same day, Plaintiff Jeanene Harlick ("Plaintiff" or "Harlick") filed a Motion for Summary Judgment. Docket No. 48 ("Pl.'s MSJ"). Both parties filed oppositions and replies. Docket Nos. 53 ("Pl.'s Opp'n"), 54 ("Def.'s Opp'n"), 61 ("Def.'s Reply"), 64 ("Pl.'s Reply). Having considered the submissions from both parties, the Court GRANTS Blue Shield's Motion for Summary Judgment and DENIES Harlick's Motion for Summary Judgment.

United States District Court
For the Northern District of California

II. **BACKGROUND**

**A. The Plan**

Effective June 1, 2006, Blue Shield and Pacific Construction & Manufacturing, Inc. ("Pacific Construction") entered into a Group Health Service Contract. Claim File ("CF") at BSC128-149.[1] Among the benefits available to participants in the Pacific Construction Plan was the Blue Shield Spectrum PPO Plan 250 Standard. Id. at BSC 150-251 (hereinafter "the Plan").[2] Plaintiff was an employee of Pacific Construction who enrolled as a subscriber to the Plan. Docket No. 18 ("Am. Compl.") ¶¶ 1-5. The Plan is regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, as amended, 29 U.S.C. §§ 1001-1461. Id. ¶ 1.

The Plan provides that "Blue Shield of California shall have the power and discretionary authority to construe and interpret the provisions of this Plan, to determine the Benefits of this Plan and determine eligibility to receive Benefits under this Plan." CF at BSC00241. With regard to mental health benefits, the plan covers inpatient services, outpatient or office services, psychological testing, and psychosocial support. Id. at BSC00220-222. For inpatient services, "[b]enefits are provided for psychiatric Inpatient Services in connection with hospitalization or psychiatric Partial Hospitalization (day treatment) for the

[1] Pursuant to the Stipulation of the parties, Plaintiff submitted for manual filing a CD containing the Claim File of Defendant Blue Shield. Docket No. 48-2. All citations will be to the Claim File ("CF").

[2] Pacific Construction & Manufacturing Inc. Group Health Plan was named as a Defendant in this action, but dismissed from this action without prejudice on February 4, 2010, based on Blue Shield's acknowledgment that it will be liable for any judgment or settlement concerning payment or non-payment to Plaintiff. See Docket No. 60.

treatment of mental illness . . . . Residential Care is not covered." Id. A Hospital is defined as:

> (1) a licensed institution primarily engaged in providing, for compensation from patients, medical, diagnostic and surgical facilities for care and treatment of sick and injured persons on an Inpatient basis, under the supervision of an organized medical staff, and which provides 24-hour a day nursing service by registered nurses. . . . (2) a psychiatric Hospital accredited by the Joint Commission on Accreditation of Healthcare Organizations; or (3) a psychiatric healthcare facility as defined in Section 1250.2 of the Health and Safety Code.

Id. at BSC00171. The PPO Plan also provides for up to 100 days per year of treatment at a Skilled Nursing Facility ("SNF"), id. at BSC202, which is defined as "a facility with a valid license issued by the California Department of Health Services as a Skilled Nursing Facility or any similar institution licensed under the laws of any other state, territory, or foreign country." Id. at BSC00173.

**B. Plaintiff Admitted to Castlewood Treatment Center**

Plaintiff suffered from an eating disorder, severe depression, obsessive compulsive disorder ("OCD"), and severe anxiety. Am. Compl. ¶ 7. Plaintiff was admitted to the Castlewood Treatment Center ("Castlewood") on April 17, 2006. CF at BSC391. Castlewood, located in Missouri, specializes in eating disorders. Id. at BSC393. On May 10, 2006, Plaintiff had a feeding tube placed in her at St. Luke's Hospital in Missouri to help her gain weight. Id. at BSC396. Plaintiff remained in Castlewood for approximately 191 days. Pl.'s MSJ at 5. Blue Shield paid for Plaintiff's first eleven days at Castlewood from April 17, 2006 to April 27, 2006. CF at BSC321. Blue Shield initially regarded



United States District Court
For the Northern District of California

Castlewood as a "Preferred Hospital." Id. When Plaintiff submitted claims for subsequent treatment at Castlewood, Blue Shield denied those claims. See id. at BSC408-09, 413, 563-64, 567, 662. Plaintiff filed this action alleging that Blue Shield improperly denied her claim for benefits. See Am. Compl.

## III. LEGAL STANDARD

### A. Standard of Review

"[A] denial of benefits . . . is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan confers such discretion, then the denial is reviewed for an abuse of discretion. Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 2347-48 (2008) ("MetLife"). If the same entity both decides who gets benefits and pays for them, then it labors under a "structural" conflict of interest. Id. at 2349-50; Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 868 (9th Cir. 2008); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 965 (9th Cir. 2006). District courts must weigh this conflict "as a factor in determining whether there is an abuse of discretion." MetLife, 128 S.Ct. at 2348 (quoting Firestone, 489 U.S. at 115). Taking into account the conflict "necessarily entails a more complex application of the abuse of discretion standard." Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 626 (9th Cir. 2009). "[T]he court must consider numerous case-specific factors, including the administrator's conflict of interest, and reach a



United States District Court
For the Northern District of California

decision as to whether discretion has been abused by weighing and balancing those factors together." Id.

The weight the court assigns to the conflict of interest depends on the fact and circumstances of the particular case. According to the Supreme Court:

> The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

MetLife, 128 S.Ct. at 2351 (internal citation omitted). In determining whether to view the decision of a conflicted administrator with skepticism, district courts may also consider "any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." Abatie, 458 F.3d at 968. District courts may weigh a conflict more heavily "if, for example, the administrator provides inconsistent reasons for denial, . . . fails adequately to investigate a claim or ask the plaintiff for necessary evidence . . . ; fails to credit a claimant's reliable evidence . . . ; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." Id. at 968-69.

The district court "may, in its discretion, consider evidence outside the administrative record to determine the nature, extent,



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

and effect on the decision-making process of the conflict of interest; the decision on the merits though, must rest on the administrative record once the conflict (if any) has been established . . . ." Id. at 970. On a motion for summary judgment in an ERISA case, the traditional rules of summary judgment apply to evidence outside of the administrative record, including the requirement that the evidence must be viewed in the light most favorable to the non-moving party. Nolan v. Heald College, 551 F.3d 1148, 1150 (9th Cir. 2009).

## IV. DISCUSSION

### A. Evidentiary Objections

Blue Shield filed evidentiary objections to a number of exhibits filed by Harlick in support of her motion for summary judgment. Docket No. 58 ("Def.'s Objections"). Assuming arguendo that the challenged evidence is admissible, the Court finds it is insufficient to create a genuine issue as to whether Blue Shield's denial of benefits to Harlick was improper. Therefore, the Court does not need to issue a ruling regarding Blue Shield's objections.

Harlick filed objections to the Declaration of Joan Russo ("Russo") filed in support of Blue Shield's Motion for Summary Judgment. Docket No. 53-1 ("Pl.'s Objections").[3] Harlick objects in a general manner that the statements contained in the Russo declaration are an improper attempt to supplement the claim file. Id. In this Order, the Court relies on the evidence as presented in the Claim File, rather than any particular party's

[3] Russo, a senior manager in the legal department at Blue Shield, filed a declaration in support of Blue Shield's Motion for Summary Judgment. Docket No. 47.

characterization of that evidence, and therefore, the Court does not need to rule on Harlick's generalized objection.

Harlick objects to various statements made by Russo in her declaration on the grounds that they either lack foundation or contain inadmissible hearsay. Pl.'s Objections at 2-3. "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). Russo is a senior manager in the legal department at Blue Shield, and the Court sees no reason to question the admissibility of the statements made in paragraphs 3, 4, 9, 12, 14, and 31 because Russo has personal knowledge of the facts stated in those paragraphs. The Court OVERRULES Harlick's objections to the statements made in those paragraphs.

The Court SUSTAINS Plaintiff's objections to the statements made on information and belief in paragraphs 15, 16, 17. With regard to the exhibits discussed in paragraphs 17, 18, 21, 23, 25, and 32, these documents are part of Plaintiff's Claim File and can be considered by the Court in reviewing the plan administrator's decision to deny Plaintiff's claim for benefits. The Court OVERRULES Plaintiff's objections to these exhibits. When considering the evidence, the Court will focus on the documents themselves, rather than Russo's description of the documents.

**B. Castlewood and the MHPA**

Plaintiff contends that the fundamental issue in this case is "whether the Blue Shield policy violates California Mental Health Parity Law because it does not offer the same levels of treatment for mental health conditions as for physical conditions." Pl.'s



United States District Court
For the Northern District of California

Opp'n at 6. According to Plaintiff, this question of law should be decided de novo. Id. Plaintiff also suggests that the Court should apply an abuse of discretion standard tempered with skepticism based on the presence of a number of factors, including Blue Shield's reliance on a Plan that allegedly violates the California Mental Health Parity Act ("MHPA"). Pl.'s Opp'n at 9.

In this case, the Court does not need to rule on whether Harlick's Plan violates the MHPA. One key issue in this case is the status of Castlewood. Plaintiff contends that Castlewood is a Skilled Nursing Facility ("SNF"). Pl.'s MSJ at 11-12. According to Plaintiff, the Plan violates the MHPA because it provides coverage at a SNF for the treatment of physical conditions, but not for the treatment of mental conditions. Pl.'s MSJ at 2, 11. The MHPA provides, in pertinent part, that:

> (a) Every policy of disability insurance that covers hospital, medical, or surgical expenses in this state . . . shall provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses of a person of any age . . . under the same terms and conditions applied to other medical conditions, as specified in subdivision (c).
>
> (b) These benefits shall include the following: (1) Outpatient services; (2) Inpatient hospital services; (3) Partial hospital services; (4) Prescription drugs, if the policy or contract includes coverage for prescription drugs.
>
> (c) The terms and conditions applied to the benefits required by this section that shall be applied equally to all benefits under the disability insurance policy shall include, but not be limited to, the following: (1) Maximum lifetime benefits; (2) Copayments and coinsurance; (3) Individual and family deductibles.

Cal. Ins. Code § 10144.5. As explained below, the Court determines that Castlewood is not a SNF as that term is defined in Harlick's

Plan. Therefore, the Court does not need to reach Plaintiff's argument that the Plan violates the MHPA. Doing so would be pointless, because even if the Court agreed with Plaintiff that the MHPA requires the Plan to cover treatment at a SNF for both mental and physical conditions, Harlick would still not be entitled to relief, because there is no question that Castlewood is not a SNF.

**1. Castlewood Is Not a Hospital**

There is no dispute in this case that Castlewood is not a Hospital as defined in Harlick's Plan. See Pl.'s Opp'n at 1 ("Blue Shield cites and discusses the Plan provisions defining a 'Hospital.' Plaintiff agrees that Castlewood was not and is not a Hospital, as that term is defined in the Plan."). Castlewood is not accredited as a hospital or psychiatric hospital by the Joint Commission on Accreditation of Health Care Organizations. CF at BSC3604.

**2. Castlewood Is Not a SNF**

Plaintiff contends that Castlewood should be regarded as a SNF as defined in her Plan. Pl.'s MSJ at 11. Under California law, a SNF is "a health facility that provides skilled nursing care and supportive care to patients whose primary need is for availability of skilled nursing care on an extended basis." Cal. Health & Safety Code § 1250(c). The Plan defines a SNF as "a facility with a valid license issued by the California Department of Health Services as a Skilled Nursing Facility or any similar institution licensed under the laws of any other state, territory, or foreign country." CF at BSC173. Castlewood, located in Missouri, is obviously not a facility licensed by the California Department of Health Services. Hence, the question here is whether Castlewood is



United States District Court
For the Northern District of California

a similar institution licensed under the laws of the State of Missouri.

In 2006, Castlewood was licensed by the Department of Mental Health in Missouri as a Psychiatric Group Home and as a Day Program. CF at BSC3602, 3603. Missouri regulations define a psychiatric group home as: "a community residential facility with less than sixteen (16) residents providing twenty-four (24)-hour accommodations, psychiatric supervision, board, storage and distribution of medications, protective oversight and psychosocial rehabilitation for residents who can benefit from an intense, highly structured treatment setting." 9 Mo. Code of State Regulations § 40-1.015(2)(JJ). A Day Program is defined, in part, as "a place providing a series of interventions, activities and instruction delivered by qualified staff for the purpose of evaluation, treatment, habilitation or rehabilitation for persons with mental disorders, mental illness, mental retardation or developmental disabilities." Id. § 40-1.015(2)(J).

Missouri licenses SNFs. CF at BSC 3498. In Missouri, a SNF is defined as:

> any premises, other than a residential care facility, assisted living facility, or an intermediate care facility, which is utilized by its owner, operator, or manager to provide for twenty-four (24) hour accommodation, board and skilled nursing care and treatment services to at least three (3) residents . . . Skilled nursing care and treatment services are those services commonly performed by or under the supervision of a registered professional nurse for individuals requiring twenty-four (24) hours a day care by licensed nursing personnel including acts of observation, care, and counsel of the aged, ill, injured, or infirm, the administration of medications and treatments as prescribed by a licensed physician or dentist, and other nursing functions requiring substantial specialized



United States District Court
For the Northern District of California

judgment and skill.

19 Mo. Code of State Regulations 30-83.010(48). Castlewood is not licensed as a SNF. Id. at BSC 3518.

Plaintiff concedes that Castlewood is not licensed as a SNF, but she argues that it would be impossible for Castlewood to obtain such a license because, in Missouri, only facilities treating physical illnesses are licensed as SNFs. Pl.'s Opp'n at 2-3. This argument does not help Plaintiff's case. If it is impossible for Castlewood to be licensed as a SNF in Missouri, then the Court cannot regard Castlewood as a SNF.

Plaintiff contends that, while not licensed as a SNF, Castlewood is a similar institution. Pl.'s MSJ at 11. Plaintiff points out that Castlewood's website lists "[d]aily nursing care" as included in Castlewood's treatment program. CF at BSC276. As noted above, the Plan defines a SNF as "a facility with a valid license issued by the California Department of Health Services as a Skilled Nursing Facility or any similar institution licensed under the laws of any other state, territory, or foreign country." CF at BSC173.

The Court determines that when the Plan uses the phrase "similar institution licensed under the laws of another state," it does not mean any licensed institution, but rather institutions in other states that are licensed as SNFs. Otherwise the words "licensed under the law of any other state" would be superfluous. Use of these words means that the determinative factor is whether the out-of-state institution is licensed as a SNF. Missouri licenses SNFs, but Castlewood is not so licensed; instead, it is licensed as a Psychiatric Group Home and a Day Program. Hence,



United States District Court
For the Northern District of California

Castlewood is not a "similar institution licensed under the laws of any other state." While the fact that Castlewood is not licensed as a SNF is sufficient for the Court to conclude that Castlewood is not a similar institution, the Court also notes that the professional staff listed on Castlewood's website does not include any licensed doctors or nurses, see CF at BSC3491-92, and Plaintiff has not presented any evidence to the Court showing that Castlewood's staff includes nurses.

Since Castlewood is not a SNF or similar to one, the Court does not need to reach Plaintiff's argument that Harlick's Plan violates the MHPA. Instead, the Court proceeds to determine the standard of review that applies to Blue Shield's denial of Harlick's claim for benefits.

**C. Abuse of Discretion Tempered with Skepticism**

Here, based on the unambiguous provision in the Plan granting Blue Shield discretionary authority, see CF at BSC241, the Court must review Blue Shield's denial of benefits for an abuse of discretion. However, in determining whether this abuse of discretion standard should be "tempered with skepticism," see Nolan, 551 F.3d at 1155, the Court must take into account a number of factors, including Blue's Shield's structural conflict, and the fact that a number of Blue Shield's reasons for denying Harlick's claim were erroneous.

Blue Shield agrees that "the Court is required to consider Blue Shield's status as the funder of the Plan" in applying the abuse of discretion standard. Def.'s Reply at 3. Blue Shield contends that the Court should apply an ordinary abuse of discretion standard because this structural conflict of interest is

not accompanied by any evidence of malice, self-dealing, or a parsimonious claims-granting history. Id. at 3-4. The Court disagrees. On April 6, 2007, Blue Shield provided a number of different explanations for why it denied Harlick's claim, some of which turned out to be erroneous. Compare CF at BSC413 with CF at BSC387-90, BSC497-500. For example, Blue Shield incorrectly informed Harlick she was required to receive prior authorization for her treatment at Castlewood, and that the medical necessity of being treated at Castlewood had not been established. Id. at BSC413. A letter from the Department of Managed Health Care ("DMHC") to Harlick acknowledges that she was provided with "conflicting information" regarding the basis for denial. Id. at BSC3397. Based on this conflicting information, the Court should weigh Blue Shield's structural conflict more heavily. See Abatie, 458 F.3d at 968 ("A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial . . . ."). Accordingly, the Court tempers its review of Blue Shield's denial with skepticism.

**D. Reviewing the Record**

**1. Denial and Appeal**

On or around September 20, 2006, Dr. Bruce Berg, on behalf of Blue Shield, denied Plaintiff's claims for treatment at Castlewood after April 27, 2006, based on a determination that Castlewood provided "residential care," and as such, was not covered by Plaintiff's Plan. CF at BSC567, BSC662. The review states that Plaintiff's treatment at Castlewood "appears to be residential care . . . No notes support that this is a state psychiatric hospital. Residential treatment is not a benefit." Id.



United States District Court
For the Northern District of California

Plaintiff's mother, Robin Watson ("Watson"), sent Blue Shield an appeal letter on November 13, 2006. See CF at BSC391-92. Watson appealed on the basis that her daughter was suffering from anorexia, which is a covered mental illness under California's MHPA. Id. at BSC391. Watson stated that the Castlewood treatment should be considered a "Skilled Nursing" benefit. Id. She stated that her daughter was admitted to Castlewood in April because the only other appropriate facility had a three-to-four month waiting list with no guarantee of admission. Id. at BSC392. Watson enclosed letters from the professionals treating her daughter. Id. at BSC393-97.

Upon review, the Grievance Department at Blue Shield sent Harlick a letter, on December 12, 2006, upholding its denial of Plaintiff's claims for treatment at Castlewood. Id. at BSC 408-09, BSC516. Blue Shield's records show that Harlick's claim was reviewed by Mary Ann Schweppe, RN, and Dr. David Battin, MD. Id. at BSC563, 564. Since Dr. Berg's initial denial, Blue Shield received admission orders from Castlewood noting that Plaintiff's admission status was "residential." Id. at BSC563. The review notes that Plaintiff remained in the residential care program at Castlewood until August 25, 2006, when she was discharged to a "step-down house care program" where she had more autonomy. Id. In upholding the denial of Plaintiff's claim for coverage at Castlewood, Dr. Battin wrote: "The principal reason is that these services are not a covered benefit. As per your health plan's Evidence of Coverage (EOC), residential care is not covered for mental health services." Id. at BSC564.

The letter sent to Harlick on December 12, 2006, states that



United States District Court
For the Northern District of California

residential care was not covered under her plan. Id. at BSC408. Blue Shield enclosed relevant excerpts from her Plan with the appropriate language underlined, and noted that the review was based on an evaluation of medical information and records from entities including Castlewood Treatment Center. Id. The letter informed Plaintiff of her right to request an independent medical review through the DMHC. Id. at BSC408-09, BSC516-17.

In early January 2007, Blue Shield received additional records from Castlewood relating to Harlick. Id. at BSC2586. Dr. Carroll Cederburg, MD, reviewed the records and advised that "[s]ervices are for residential care and these services are not a benefit – see contract section 'Mental Health/Substance Abuse Treatment – Inpatient Facility.'" Id.

Watson responded to Blue Shield on March 6, 2007. Id. at BSC410, BSC513. She informed Blue Shield of inaccuracies in the December 12, 2006 letter regarding the identity of Harlick's primary care physician. Id. The letter reiterates that, under California law, insurance companies must provide equal coverage for mental and physical illnesses. Id. Watson enclosed a letter from Harlick's primary care physician, and requested additional review of Harlick's case. Id. at BSC410-12, BSC514-15.

Blue Shield's Grievance Department responded to Watson's letter on April 6, 2007. Id. at BSC413, BSC505. The letter advised that Blue Shield had reviewed additional records, and once more upheld the denial of Harlick's claims for treatment at Castlewood. Id. The letter provides a number of different reasons for denying the claim. First, it states that inpatient psychiatric hospital care requires prior authorization, except in emergency



United States District Court
For the Northern District of California

situations, and since Harlick travelled to Missouri to be admitted to a particular facility, her admission to Castlewood could not be considered an emergency. Id. Second, it states that that residential care is not a covered benefit. Id. The letter also states that Harlick was eligible for coverage for professional fees. Id. The information is this letter was based on Dr. David Battin's review of Harlick's file in late March, 2007. Id. at BSC509.

On April 30, 2007, Carolyn Garner, a Lead Coordinator in Blue Shield Grievance Department, sent Harlick a letter correcting errors in Dr. Battin's review. Id. at BSC387-90, BSC497-500. With regard to Dr. Battin's claim that Harlick should have received pre-authorization, Garner explains that this requirement only applies to services provided in California. Id. Since Castlewood is located in Missouri, this requirement did not apply in Harlick's case. Id. The letter goes on to explain that Harlick's claims were denied because Castlewood is not licensed as an acute care hospital or a psychiatric hospital/healthcare facility. Id. at BSC388, BSC498. Garner states Castlewood is licensed as a residential treatment center. Id. Garner states that Dr. Dorsey Dysart, in a letter provided to Blue Shield, described Castlewood's care as residential. Id.; see also CF at BSC393. Garner notes that the Plan clearly states that residential care is not covered. CF at BSC388, BSC498.

Garner points out that the April 6, 2007 letter was also incorrect when it stated that Harlick's professional fees at Castlewood were covered by the Plan. Id. These fees were billed as part of the global fee for Harlick's admission to Castlewood.



United States District Court
For the Northern District of California

Id. The bills were not sent independently by the providers. Id. Therefore no benefits are payable for these therapy services. Id. The letter also notes that the MHPA is not implicated because the Plan does not provide residential care for mental health conditions or medical conditions. Id. at BSC389, 499.

**2. Plaintiff Seeks Further Review**

On April 9, 2007, Watson sent a letter to California's Insurance Commissioner complaining about Blue Shield's denial of her daughter's claim. Id. at BSC2213. The letter states that Harlick is protected by California's parity law and the insurance company is not paying the claim. Id. On April 19, 2007, the Department of Insurance notified Watson that the DMHC had jurisdiction over the policy of insurance. Id. at BSC312.

On May 15, 2007, the DMHC sent a letter to Blue Shield requesting information as part of its review of Blue Shield's denial of Harlick's claims. Id. at BSC492-93. Joan Russo ("Russo"), a Senior Manager in the legal department at Blue Shield, responded on May 23, 2007. Id. at BSC415. Russo's letter repeats the information contained in Garner's April 30, 2007 letter, and adds additional information in response to specific requests from the DMHC. Id. at BSC415-17.

In light of Dr. Solomon's concerns that prior to her admission to Castlewood, Harlick was in need of intensive psychiatric and nutritional in-patient treatment, the DMHC sought information about Plaintiff's in-plan treatment options. Id. at BSC416. Russo responded that under Harlick's Plan, the U.S. Behavioral Health Plan, California ("USBHPC") was responsible for administering claims for services provided in California. Id. Russo attached

United States District Court
For the Northern District of California

notes from USBHPC showing that Harlick was authorized for Intensive Outpatient treatment at Ohloff Recovery. Id. at BSC454-470. A March 7, 2006 note states that Harlick's therapist thought she might need a higher level of care, but that the patient "has no RTC [residential treatment center] benefits." Id. at BSC463. The DMHC also asked whether Plaintiff's physician, Dr. Solomon, had requested treatment at Castlewood. Id. at BSC417. Russo responded that Blue Shield had no record of any contact by Dr. Solomon. Id.

On May 25, 2007, the DMHC concluded that Blue Shield was not obligated to provide coverage for the services Harlick received at Castlewood from April 29, 2006 to August 25, 2006. Id. at BSC3397. The DMHC letter states:

> Although you have been provided with conflicting information from the Plan regarding its basis for denial, Blue Shield has now confirmed that it denied coverage because you do not have a benefit for residential care. [¶] After reviewing all of the information submitted, we are unable to direct Blue Shield to cover these services. According to the terms of your health plan contract, as described in your Evidence of Coverage, residential care is excluded from coverage. As Castlewood is licensed as a residential treatment center, rather than an acute in-patient facility, Blue Shield is not obligated to provide coverage for this treatment.

Id.

On May 23, 2007, Watson sent Garner a nine-page letter on behalf of her daughter concerning the denial of her daughter's claims. Id. at BSC371-79. The letter included additional information concerning Harlick's treatment at Castlewood from April 17, 2006 until January 31, 2007. Id. at BSC380-386.

Russo responded in a detailed letter on August 3, 2007. Id. at BSC260-267. The letter reiterates that Castlewood offers a

residential treatment program, and Harlick's plan does not cover residential care. Id. at BSC260. The Initial Assessment completed at the time of Harlick's admission to Castlewood states under Recommendations: "RTC for stabilization, normalization of eating . . . ." Id. at BSC280. Russo's letter points out that "RTC" is shorthand for residential treatment. Id. at BSC 261.

In response to Watson's questions, Russo explains that Blue Shield paid for Harlick's first eleven days at Castlewood due to a coding error. Id. at BSC262. The claim was coded and paid as an in-patient hospital claim. Id. Russo points out that Castlewood is not a hospital, and Blue Shield paid all of Harlick's claims for treatment at the St. Luke's Medical Center, since hospital treatment is covered by the Plan. Id. at BSC264. In response to a question concerning why Harlick's treatment is not covered as a SNF benefit, Russo explains that Castlewood is not licensed in Missouri as a SNF. Id.

**3. No Abuse of Discretion**

Reviewing this record with skepticism, the Court cannot conclude that Blue Shield abused its discretionary authority to interpret the terms of Harlick's Plan and determine her eligibility for benefits. Even though Blue's Shield's April 6, 2007 letter contains a number of erroneous explanations for the denial, see CF at BSC413, Blue Shield quickly corrected the mistakes on April 30, 2007, see CF at BSC387-90, BSC497-500. Furthermore, from the beginning of Blue Shield's correspondence with Harlick and her mother, Blue Shield consistently stated that the denial was based on the fact that the Plan does not cover residential care.

The first doctor to consider Plaintiff's claim stated: "This



United States District Court
For the Northern District of California

appears to be residential care. . . . Residential treatment is not a benefit." Id. at BSC567, 662. When Plaintiff's mother appealed the decision, another doctor, Dr. Battin, confirmed in late 2006 that residential care is not covered under her Plan. Id. at BSC564. After receiving additional records from Castlewood, a third doctor, Dr. Cederburg, determined that "[s]ervices are for residential care and these services are not a benefit." Id. at BSC2586. While some of the information contained in the April 6, 2007 letter was erroneous, the letter also states that residential care was not a covered benefit. Id. at BSC413, 505. In the follow-up letter correcting the errors, Blue Shield emphasized that treatment at Castlewood was denied because it is a residential treatment center. Id. at BSC388, 498. The DMHC agreed that "residential care is excluded from coverage." Id. at BSC3397. On August 3, 2007, Russo of Blue Shield again emphasized that the claim was denied because Castlewood is a residential treatment program and the Plan does not cover residential care. Id. at BSC260.

Reviewing Blue Shield's decision with skepticism, the Court finds no abuse of discretion in its determination that Castlewood was a residential treatment program. Castlewood is licensed under the laws of Missouri as a Psychiatric Group Home and a Day Program. CF at BSC3602, 3603. Missouri regulations define a psychiatric group home as: "a community residential facility." 9 Mo. Code of State Regulations § 40-1.015(2)(JJ) (emphasis added). Under the "frequently asked questions" of Castlewood's website, and in response to a question concerning whether insurance will pay for the treatment, it states that "Castlewood is licensed as a



United States District Court
For the Northern District of California

Residential Facility, so it is important to obtain the residential benefit and not simply the 'inpatient' benefit as they might be different."  CF at BSC274, 442, 3482.  Harlick's Initial Assessment Form indicates that she was being admitted to Castlewood for residential care.  Id. at BSC280, 739.  Harlick signed forms acknowledging that Castlewood was not a medical facility, id. at BSC726, and acknowledging that she would be responsible for administering her own medications, id. at BSC3375.

Plaintiff contends that the Plan statement that "[r]esidential care is not covered" is ambiguous.  Pl.'s MSJ at 12.  Plaintiff contends that the placement of the sentence in the section of the Plan describing "inpatient mental health services" means that the intent was to preclude only some kinds of residential care.  Id. at 13-14.  Plaintiff faults the Plan for failing to define residential care, and for failing to include residential care in the Plan's List of Limitations, Exceptions, Exclusions and Reductions.  Id. at 14.

"Although an ERISA plan is a contract, ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans."  Gilliam v. Nevada Power Co., 488 F.3d 1189, 1194 (9th Cir. 2007) (internal citations and quotations omitted).  Courts therefore normally "apply contract principles derived from state law . . . guided by the policies expressed in ERISA and other federal labor laws."  Id.  These principles comprise a "nationally uniform federal common law" applied in the ERISA context.  See Saltarelli v. Bob Baker Group Med. Trust, 35 F.3d 382, 386 (9th Cir. 1994).  Under the uniform federal common law, courts should interpret plan terms "in an ordinary and popular

sense as would a person of average intelligence and experience." Babikian v. Paul Revere Life Ins. Co., 63 F.3d 837, 840 (9th Cir. 1995) (quoting Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990)).

Here, the Court finds no ambiguity in the Plan's exclusion of residential care from coverage. In the section of Plaintiff's Plan dealing with mental health benefits, the Plan clearly and conspicuously states that "[r]esidential care is not covered." See CF at BSC220, 222, 225. This statement occurs three times in the Plan. The statement is made in the section describing benefits for "inpatient mental health services," id. at BSC220, in the section describing covered benefits for "Professional (Physician) Services," id. at BSC222, and in the section describing "Partial Hospitalization Services." Id. at BSC225. Interpreting the phrase "[r]esidential care is not covered" in its ordinary and popular sense, the phrase is not ambiguous. The Court fails to understand how a person of average intelligence and experience could read the six pages of the Plan that focus on mental health benefits, see BSC220-26, and not realize that mental health benefits under the Plan do not extend to residential care.

## V. CONCLUSION

In summary, the Court determines that Castlewood is not a SNF, or a "similar institution licensed under the laws of any other state," and therefore the Court does not reach Plaintiff's contention that the Plan violates California's MPHA. Reviewing Blue Shield's denial of benefits with skepticism, the Court determines there was no abuse of discretion. Although Blue Shield

provided a number of conflicting reasons for denial, it consistently informed Harlick that Castlewood was a residential treatment facility, and residential care was not covered under her Plan. The record supports Blue Shield's determination that Castlewood provided residential care to Harlick. The Court finds no ambiguity in the Plan concerning the question of whether benefits extended to residential care.

For the foregoing reasons, the Court GRANTS the Motion for Summary Judgment filed by Defendant California Physicians' Service d/b/a Blue Shield of California, and DENIES the Motion for Summary Judgment filed by Plaintiff Jeanene Harlick.

IT IS SO ORDERED.

Dated: March 4, 2010



UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California