IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANENE HARLICK | ) Case No. C 08-3651-SC |
| Plaintiff, | ) ORDER GRANTING MOTION FOR |
| v. | ) ENTRY OF JUDGMENT AND FOR |
| | ) ATTORNEY FEES AND COSTS |
| BLUE SHIELD OF CALIFORNIA, | ) |
| Defendant. | ) |

**I.   INTRODUCTION**

Now before the Court is Plaintiff Jeanene Harlick's ("Harlick") motion for entry of judgment and for attorney fees and costs. ECF No. 104 ("Mot."). Defendant Blue Shield of California ("Blue Shield") has opposed the Motion and Plaintiff has filed a reply in support of the Motion. ECF Nos. 105 ("Opp'n"), 107 ("Reply"). Pursuant to Civil Local Rule 7-1(b), this matter is appropriate for determination without oral argument. For the reasons set forth below, Harlick's Motion is GRANTED.

///
///
///

## II. BACKGROUND

Harlick suffers from anorexia nervosa and, in 2006, was admitted to the Castlewood Treatment Center ("Castlewood"), which specializes in eating disorders. Harlick remained at Castlewood for 191 days. Blue Shield, the administrator of Harlick's ERISA Plan, paid for Harlick's first eleven days at Castlewood, but then refused to pay for the rest of her treatment.

Harlick filed this action against Blue Shield in October 2008, seeking payment of healthcare benefits. On March 4, 2010, the Court granted Blue Shield's motion for summary judgment. Harlick v. Blue Shield of Cal., CIV 08-3651 SC, 2010 WL 760484 (N.D. Cal. Mar. 4, 2010). The Court concluded that Castlewood provided residential care to Harlick and found that Harlick's plan unambiguously excluded coverage for such care. The Court also found that, while the plan provided coverage for Skilled Nursing Facilities ("SNF"), Castelwood was not an SNF. The Court declined to reach the issue of whether California's Mental Health Parity Act (the "Parity Act") required coverage of Harlick's treatment at Castlewood.

Harlick subsequently appealed. The Ninth Circuit held that the plan did not require coverage for Harlick's residential care, but found that coverage was mandated by the Parity Act, which requires coverage for "medically necessary treatment" of "severe mental illnesses." Harlick v. Blue Shield of Cal., 686 F.3d 699, 721 (9th Cir. 2012). Blue Shield filed a petition for certiorari to the Supreme Court, and the Supreme Court asked Harlick to file an opposition to that petition. On March 4, 2013, the Supreme Court denied Blue Shield's cert petition.

## III. DISCUSSION

### A. Judgment Amount

Harlick now seeks entry of judgment in the amount of $218,749.44, which includes prejudgment interest. Harlick's mother, Robin Watson ("Watson"), has filed a declaration setting forth how Harlick arrived at this amount. ECF No. 104-12 ("Watson Decl."). Watson declares that she paid Castlewood $146,290 for Harlick's treatment. Id. ¶ 9. Watson also declares that she had to draw down from a home equity line and twice refinance her home to finance Harlick's care at Castlewood. Id. ¶¶ 4-7. Watson incurred $61,523 in interest payments. Id. ¶ 9. She also incurred $10,936.44 in points (prepaid interest) and fees in refinancing her home loans. Id.

Blue Shield does not object to the entry of judgment in the amount of $146,290, or to the award of prejudgment interest in the amount of $61,523.00. Opp'n at 3. However, it does oppose Harlick's attempt to include in the judgment the $10,936.44 that Watson spent on points and fees in connection with the two refinances of her home mortgage. Id. Harlick responds that Blue Shield benefitted from Watson's refinancing because the refinancing lowered the prejudgment interest that Blue Shield must now pay. Reply at 1.

In ERISA cases like this one, district courts have the discretion to award prejudgment interest. Blankenship v. Liberty Life Assur. Co. of Boston, 486 F.3d 620, 627 (9th Cir. 2007). The award of prejudgment interest is intended to compensate the plaintiff for losses incurred as a result of an insurer's nonpayment of benefits. See Dishman v. UNUM Life Ins. Co. of Am.,

269 F.3d 974, 988 (9th Cir. 2001). "Generally, the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." Blankenship, 486 F.3d at 628 (quotations and citations omitted). In this case, the rate set by 28 U.S.C. § 1961, the Treasury bill rate, is substantially lower than the interest rate Watson paid. The Court finds that deviating from this rate is an appropriate and equitable means of compensating Harlick for the interest payments her mother incurred in funding her treatment.

However, the Court declines to compensate Harlick for the points and fees associated with Watson's refinancing. While it is true that Blue Shield benefitted from the refinancing, Watson also benefitted. The lower interest rate affects Watson's entire home loan, not just that portion she borrowed to pay for Harlick's treatment. Further, Harlick has cited no authority indicating that the award of prejudgment interest should include the costs a party incurs in securing a more favorable interest rate.

For these reasons, the Court finds that judgment in the amount of $207,813, inclusive of prejudgment interest, is appropriate.

**B.  Attorney Fees**

The Court considers whether Harlick is entitled to attorney fees. Concluding that she is, the Court next determines the appropriate lodestar amount and whether that amount should be enhanced by a multiplier.

///

///

4

### i. Attorney fees under 29 U.S.C. § 1132(g)

The ERISA statute provides that "the court in its discretion may [award] a reasonable attorney's fee and costs of action to either party" in an action involving delinquent contributions. 29 U.S.C. § 1132(g)(1). The Supreme Court has held that courts may only award fees to a party that has achieved "some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co., 130 S. Ct. 2149, 2158 (2010). Additionally, the Ninth Circuit has stated that a plan participant who prevails in an action to collect benefits under the plan "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1984) (quotations omitted).

The Ninth Circuit has also set forth a number of factors to consider in determining whether attorney fees are appropriate:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

Hummell v. S. E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980). "No one of the Hummell factors . . . is necessarily decisive, and some may not be pertinent in a given case." Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir. 1984). The Hummell factors are generally construed in favor of protecting participants in employee benefit plans. McElwaine v. US W., Inc., 176 F.3d 1167, 1172 (9th Cir. 1999).

Blue Shield does not appear to dispute that Harlick achieved at least some degree of success on the merits, but it argues that four of the five Hummell factors do not apply here. The Court addresses the parties' arguments on the Hummell factors below.

The Court agrees that the first Hummell factor does not favor the award of attorney fees. Harlick argues that Blue Shield is culpable because the Ninth Circuit rejected its interpretation of the Parity Act. Mot. at 7. But the Ninth Circuit's decision was ultimately premised on an argument that the court raised for the first time at oral argument -- that all medically necessary treatment for listed conditions must be covered. The Ninth Circuit rejected Harlick's interpretation of the plan and did not adopt her initial theory of the Parity Act. Nevertheless, this factor alone is not dispositive. See Russell, 726 F.2d at 1416.

As to the second Hummell factor, Blue Shield does not dispute that it is able to satisfy an award of attorney fees. The Ninth Circuit has held that, "[b]ased on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." Smith, 746 F.2d at 590. The court reasoned that, absent fee shifting, it is generally difficult for an individual plan participant to carry the heavy burden of litigating a denial of benefits. Id.

With respect to the third Hummell factor concerning deterrence, Harlick argues that an attorney fee award will send a message to other California health insurers that they must follow California laws and regulations. Mot. at 7. Blue Shield responds that it was trying to follow California law in the first instance, but the law on the issue was uncertain. Opp'n at 8. Blue Shield

6

contends that, following the Ninth Circuit's decision in this case, it is unlikely that any other ERISA plan operating within the Ninth Circuit will attempt to enforce an exclusion for residential care for severe mental illness. Id. The Court finds that this factor is neutral. While a closer reading of the Parity Act may have obviated the need for this litigation, many of the legal issues raised by this case were uncertain prior to the Ninth Circuit's opinion.

The fourth Hummell factor favors the award of attorney fees. While Harlick did not seek to benefit all participants and beneficiaries of an ERISA plan, her lawsuit did resolve a significant question regarding ERISA. Specifically, it resolved the issue of whether the Parity Act prevents ERISA plans from excluding coverage for residential treatment of severe mental disorders. Blue Shield argues that this is an issue of state law, and that "ERISA was merely the vehicle for [Harlick] to bring her complaints about coverage to federal court." Opp'n at 9. This argument is unpersuasive, since in this case, state law had a significant impact on the scope of ERISA coverage. As a result of Harlick's litigation, persons living with serious mental health conditions in California are now entitled to additional protections under ERISA.

The fifth Hummell factor -- the relative merits of the parties' positions -- also favors the award of attorney fees. The Ninth Circuit ultimately held for Harlick, concluding that the Parity Act required Blue Shield to provide coverage for Harlick's treatment at Castlewood. Blue Shield argues that the Ninth Circuit rejected Harlick's interpretation of the Plan's language, as well

7

as her initial interpretation of the Parity Act. Opp'n at 9-10. But the fact remains that the Ninth Circuit ultimately held that Harlick was entitled to the relief that she requested.[1]

Since the second, fourth, and fifth Hummell factors favor an award of attorney fees, the Court finds that this case does not present the kind of special circumstances that would warrant denying attorney fees. The crux of Blue Shield's argument is that Blue Shield could not have reasonably anticipated that its denial of benefits was wrong. Opp'n at 11. However, the fact that the Ninth Circuit ultimately held for Harlick suggests otherwise.

### ii. Fee calculation

Harlick seeks attorney fees of $714,271.40, which includes a lodestar amount of $476,181 and a lodestar multiplier of 1.5. Mot. at 2. The parties dispute the reasonableness of the lodestar amount and whether the application of a lodestar multiplier is appropriate.

### a. Lodestar

The first dispute concerning the lodestar amount arises out of Harlick's request to have all of her fees paid at her counsel's current hourly rates. Blue Shield points out that Harlick's counsel performed most of their work years ago, when their hourly rates were significantly lower, and asks the court to follow an unpublished opinion by Judge Lew in Dine v. Metropolitan Life Insurance Co, No. CV-05-03773 RSWL (C.D. Cal. Dec. 9, 2011). Opp'n

---

[1] Blue Shield also argues that a Los Angeles Superior Court rejected the Ninth Circuit's interpretation of the Parity Act. Opp'n at 10 (citing Rea v. Blue Shield of Cal., 2012 WL 2377405 (Cal. Super. Ct. June 13, 2012)). But an appeal is pending in that case. In any event, the Court's analysis is based on the Ninth Circuit's decision on the merits in this case, not a state court's ruling in another action.

8

at 12 (citing ECF No. 104-2 ("Kantor Decl.") Ex. C ("Dine")). However, contrary to Blue Shield's argument, Dine does not suggest that Court should apply historical rates here. Rather, Judge Lew noted that a district court has the discretion to compensate a prevailing party for a delay in payment of attorney fees in two ways: "(1) by applying the attorneys' current rates to all hours billed during the course of the litigation, or (2) by using the attorneys' historical rates and adding a prime rate enhancement." Dine at 5 (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1305 (9th Cir. 1994)). Judge Lew found that using a prime rate enhancement was more appropriate in that case. In the instant action, Harlick's counsel should be compensated for delay in payment of their fees. They filed the action nearly five years ago and have yet to receive any form of remuneration for their services. Kantor Decl. ¶ 17. Since Blue Shield has offered no reason why the Court should apply a prime rate enhancement, the Court finds that Harlick's counsel should be compensated at their current rates.

Next, Blue Shield argues that Harlick should not be reimbursed for the time spent responding to Blue Shield's motion to dismiss. In that motion, Blue Shield argued that, under Ford v. MCI Communications Corp Health and Welfare Plan, 399 F.3d 1076 (9th Cir. 2005), Harlick had failed to sue a necessary defendant. ECF No. 8. Harlick's counsel spent 17.8 hours ($10,680) researching the motion and drafting a response, but never actually filed an opposition. Instead, Harlick filed an amended complaint. ECF No. 18. As Harlick points out, Ford was later overruled in Cyr v. Reliance Standard Life Insurance Co., 642 F.2d 1202 (2011).

9

1  Nevertheless, the Court finds that Harlick's counsel spent an
2  excessive amount of time researching and drafting an opposition
3  brief that was never filed.  Accordingly, the Court reduces
4  Harlick's lodestar amount by $5,340.
5     Blue Shield also takes issue with the 39.3 hours ($19,310)
6  Harlick's counsel billed in connection with an attempt to force
7  Blue Shield to respond to written discovery.  Some of this time was
8  spent drafting and researching a motion to compel that was
9  withdrawn after Blue Shield filed an amended privilege log.  Blue
10 Shield argues that there was no basis for Harlick's discovery
11 demands, while Harlick contends ERISA allowed for the requested
12 discovery.  The Court is reluctant to adjudicate discovery matters
13 that were not fully briefed.  However, based on a review of the
14 record, the Court finds that additional meet-and-confer efforts
15 would have obviated the need for Harlick to file a discovery motion
16 that she eventually withdrew.  It appears that Harlick's counsel
17 spent about 9.5 hours on this motion at a rate of $500 per hour.
18 Accordingly, the Court reduces Harlick's lodestar by an additional
19 $4,750.
20    The next dispute concerns legal assistance provided by Allison
21 M. Zieve, an attorney at Public Citizen Litigation Group ("Public
22 Citizen"), in connection with Blue Shield's cert petition to the
23 Supreme Court.  Public Citizen offers pro bono legal assistance by
24 opposing petitions for cert in order to protect what it perceives
25 to be public interest victories in lower courts.  ECF No. 104-21
26 ("Zieve Decl.") ¶ 2.  In this case, Public Citizen contacted
27 Harlick's counsel to offer assistance opposing Blue Shield's
28 petition.  Id. ¶ 3.  Harlick accepted Public Citizen's offer, and

10

1  Zieve spent 7.6 hours, at a rate of $640 per hour, reviewing and
2  commenting on Harlick's opposition brief.  Id. ¶¶ 3, 9, Ex. 1.[2]
3  Blue Shield argues that it should not have to pay for Zieve's
4  services because they were offered on a pro bono basis.  Opp'n at
5  13.  The Court disagrees.  The fact that legal services are
6  provided pro bono does not render a fee award inappropriate, and
7  withholding a fee award in such circumstances could discourage pro
8  bono representation.  See Cuellar v. Joyce, 603 F.3d 1142, 1143
9  (9th Cir. 2010).

10  Blue Shield also argues that Harlick's counsel included
11  excessive charges for minor tasks, including 1.2 hours ($720) for
12  reviewing a two-page form order that the parties previously
13  submitted, 7.9 hours ($4,740) for reviewing Blue Shield's nine-
14  page mediation brief, and 1.7 hours ($1,105) for responding to
15  multiple media requests and interviews and for reviewing and
16  revising a press release.  Opp'n at 13-14.  Harlick characterizes
17  these objections as "nitpicks," but does not otherwise respond,
18  except to suggest that the time spent reviewing Blue Shield's
19  mediation brief was necessary because that brief articulated Blue
20  Shield's position on various issues for the first time.  Reply at
21  6.  The Court agrees that some of the time spent on these matters
22  was excessive and therefore reduces Harlick's lodestar by an
23  additional $4,000.

24  For the reasons stated above, the Court reduces Harlick's
25  requested lodestar by $14,282, leaving a total lodestar of

---

[2] In her declaration, Zieve asserts that she spent 7.9 hours working on the opposition to the Blue Shield cert petition, but the records attached to her declaration show that she only devoted 7.6 hours to the matter.  Accordingly, the Court reduces Zieve's requested lodestar by $192, to $4,864.

$461,899.

### b. Lodestar multiplier

In ERISA cases, "a court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000). "The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used . . . only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high." Id. (quotations omitted). Here, Harlick asks the Court to adjust her lodestar upward with a multiplier of 1.5. Mot. at 9-15.

The quality of an attorney's performance should generally not be used to adjust the lodestar, because considerations concerning quality are reflected in counsel's hourly rate. Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1673 (2010). However, "an enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." Id. at 1674. An enhancement may also be appropriate where "the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted" or "an attorney's performance involves exceptional delay in the payment of fees." Id. at 1674-75.

The Court finds that this case does not present the kind of rare or exceptional circumstances that would justify an enhancement

of attorney fees. Harlick argues that this case is unique because it involved difficult and untested issues of insurance coverage, because Blue Shield did not believe that Harlick would succeed, and because the Ninth Circuit's decision was groundbreaking for every insured in California suffering from severe mental illness. Mot. at 11-12. However, there is no indication that these factors were not incorporated into the rates charged by Harlick's counsel. Further, Blue Shield's perception of Harlick's likelihood of success is hardly dispositive.

Accordingly, the Court declines to apply a lodestar multiplier and awards Harlick attorney fees in the amount of $461,899.

**C. Costs**

Finally, Harlick seeks non-statutory costs in the amount of $10,663.15. Harlick has provided documentation of her costs, Kantor Decl. ¶ 19, Ex. H, and Blue Shield does not object to the amount requested. Having reviewed the evidence and the arguments and for good cause shown, the Court awards Harlick $10,663.15 in costs.

///
///
///
///
///
///
///
///
///

13

**V.  CONCLUSION**

For the foregoing reasons, Plaintiff Jeanene Harlick's motion for entry of judgment and for attorney fees and costs is GRANTED. The Court finds that Harlick is entitled to judgment in the amount of $207,813 and awards Harlick attorney fees in the amount of $461,899 and non-statutory costs in the amount of $10,663.15.  The Court will enter judgment in a separate Order.

IT IS SO ORDERED.

Dated:  June 3, 2013

_____
UNITED STATES DISTRICT JUDGE